# Hignite's Administratrix v. Louisville Neuropathic Sanitorium, et al.

(Decided January 17, 1928.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Hospitals.—In action by administratrix for damages resulting from deceased's death caused by suicide, instruction authorizing plaintiff to recover only in event defendant sanitorium and physician failed in duty to deceased because of what they knew, or by exercise of ordinary care should have known, of deceased's con-

dition at time he was admitted to sanitorium held prejudicial error, since any knowledge defendants acquired, or which by exercise of care they should have acquired after deceased was received as patient, also imposed on them duty of using reasonable means to prevent him from committing suicide.

2.    Trial.—Instruction that, if defendant sanitorium agreed to provide patient, who committed suicide, with special nurse to watch over and care for him constantly and thereafter neglected to do so, and such negligence was sole cause of patient's death, patient's administratrix could recover, which instruction submitted theory of case not authorized by pleadings, was erroneous though there was some evidence tending to establish such theory.

3.    Pleading.—Evidence tending to establish theory of liability on part of defendants, not pleaded, held incompetent.

4.    Hospitals.—In action by decedent's administratrix for damages resulting from his death caused by suicide, instruction directing jury to find for defendant sanitorium if jury believed that defendant asked decedent's son, when latter was brought to sanitorium, if special nurse was desired and was told that such nurse was not desired held erroneous, where deceased's son was given no warning or information that special nurse was necessary to prevent suicide.

5.    Hospitals.—That patient's son told sanitorium doctor that special nurse was not desired would not relieve defendants of liability for patient's death by suicide, if they subsequently learned, or by exercise of ordinary care should have learned, that patient's condition was such that he might be expected to destroy himself or attempt to do so, since, on account of relation existing, they then owed him duty to exercise ordinary care to prevent suicide or frustrate any attempt that might be made.

HUBBARD & HUBBARD and R. L. POPE for appellant.

FRED FORCHT and CARROLL & McELWAIN for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

Appellee Louisville Neuropathic Sanitorium is a corporation engaged in business for gain, and as its name indicates, it maintains a hospital or sanitorium where nervous and mental diseases are treated. Appellee W. E. Render is a doctor of medicine and is the chief medical officer of the corporation. The latter part of May or the first of June, 1925, M. G. Hignite suffered a nervous breakdown, and his family physician recommended that he be taken to appellee sanitorium and put under the

care and treatment of Dr. Render. Looking to that end, Mrs. Hignite communicated with Dr. Render, and in answer to her inquiry received this letter written on the letterhead of the Louisville Neuropathic Sanitorium, dated June 9, 1925:

"Mrs. M. G. Hignite, Barbourville, Ky.—Dear Madam: Your letter received this morning and will answer at once. You asked about our rates in regards to care and treatment of your husband. Our rates are $35 a week, and that includes everything— drugs, doctors' bills, nursing, and board. The only extra will be for having his personal clothing laundered. I would be glad if you call me over long distance phone when you decide to have him come here, so that we would be sure to have room for him. Our telephone number is South 480.

"I am, yours truly,
"(Signed)                W. E. RENDER, M. D."

After receipt of this letter, and on June 11, 1925, M. G. Hignite was taken to appellee sanitorium by his son, Thomas Hignite, and was received there the evening of that day. He remained there until some time in the early hours of June 23, when he committed suicide by hanging himself. This action was then instituted by his surviving widow, appellant, Daisy E. Hignite, as his administratrix, against appellees to recover for his estate the damage caused by the destruction of his power to earn money, upon the theory that his death was the result of their negligence. The trial below resulted in a verdict for the defendants, appellees here, and this appeal is prosecuted by appellant from the judgment thereupon entered dismissing her petition.

The chief question presented by the appeal is whether or not the instructions properly submitted the issues to the jury. The instructions complained of were Nos. 1, 2, 3, and 4, given, which read:

"(1) If the jury believe from the evidence that the defendant, the Louisville Neuropathic Sanitorium, through or by its duly authorized agents in charge of said institution, or by the defendant Render, knew or by the exercise of ordinary care could have known that the decedent, M. G. Hignite, at the

time he was received as a patient into the defendant institution, was suffering from a nervous or mental malady, from the effects of which it might be reasonably anticipated that he would thereafter commit or attempt to commit suicide, it was the duty of said defendants to exert such reasonable supervision over the said decedent, Hignite, as would serve to prevent such suicide or frustrate such attempt, and if, under these supposed circumstances, the defendants failed to exercise the care herein set forth and such failure on their part (if they did so fail) was the sole cause of the decedent's death, then the law is for the plaintiff, and the jury should so find; but unless they so believe, the law is for the defendants and the jury should so find.

"(2) If the jury believe from the evidence that, at the time the decedent was received into the defendant sanitorium as a patient, the said defendant sanitorium, by its duly authorized agent, the defendant W. E. Render, agreed with Thomas Hignite (the decedent's son) to provide the decedent with a special nurse or attendant to watch over and care for the decedent constantly, and thereafter neglected so to do, and such negligence (if any there was) was the sole cause of decedent's death, then the law is for the plaintiff and the jury should so find.

"(3) If the jury believe from the evidence that, at the time the decedent, M. G. Hignite, was received as a patient into the defendant sanitorium, the defendant W. E. Render asked Thomas Hignite (decedent's son) if he desired a special nurse or attendant for his father and was told by Thomas Hignite that such a nurse or attendant was not desired, then the law is for the defendant and the jury should so find.

"(4) If the jury believe from the evidence that there was nothing in the decedent's demeanor or in the diagnosis of decedent's malady, prior to the time decedent committed suicide, to cause the defendant's physicians in charge, in the exercise of reasonable skill and reasonable care and diligence in diagnosing decedent's malady, to anticipate or expect that he would commit suicide, then the law is for the defendants and the jury should so find."

The court is constrained to the view that instruction No. 1 is erroneous, because it authorized the jury to find for plaintiffs only in the event the defendants failed in the duty owing by them to the deceased, M. G. Hignite, because of what they knew, or by the exercise of ordinary care should have known, of his condition at the time he was admitted to the sanitorium. Any knowledge acquired by appellees or which, by the exercise of ordinary care, they should have acquired after deceased was received as a patient and before his death also imposed upon appellees the duty of using reasonable means to prevent him from committing suicide or frustrating attempts upon his part to do so. This error necessarily was prejudicial.

Instructions 2 and 3 are erroneous, because No. 2 submits a theory of the case not authorized by the pleadings. There was some testimony tending to establish the theory of liability upon the part of appellees submitted by the second instruction, but as no pleading authorized a recovery on this account that testimony was incompetent. Instruction No. 3, the converse of instruction No. 2, was erroneous and prejudicial in that it directed the jury, without reference to any other state of case, to find for the defendants if the jury should believe from the evidence that the defendant Render asked Thomas Hignite, decedent's son, when the latter was brought to the sanitorium, if a special nurse or attendant was desired, and was told by Thomas Hignite that such a nurse or attendant was not desired. Neither of these instructions should have been given. While appellee Render testified that when deceased was admitted to his sanitorium he asked Thomas Hignite whether a special nurse was desired and was informed that none was desired, he further testified that nothing then within his knowledge, or which by the exercise of ordinary care he might have known, indicated to him that the patient would attempt to destroy himself, and deceased's son was given no character of warning or information that a special nurse would be necessary in order to prevent suicide or frustrate attempts at suicide by deceased.

If it be true that, under these circumstances, deceased's son told the doctor that a special nurse was not desired, that fact would not relieve appellees of liability

in the event they subsequently learned, or by the exercise of ordinary care should have learned, that deceased's condition was such that he might reasonably be expected to destroy himself or attempt to do so. On account of the relation existing, they then owed him the duty to exercise ordinary care to prevent the suicide or frustrate any attempt that might be made.

It cannot be said, as appellees insist, that even though the instructions be held to be erroneous they must be regarded as nonprejudicial because appellant did not make a case sufficient to go to the jury. Deceased had suffered material financial losses, and the health of his wife had become so impaired that serious surgical operations had to be resorted to. His worry over these conditions had resulted in a nervous breakdown. He was ac cepted by appellee sanitorium as a patient under these circumstances. His family physician who had treated him prior to this, and who recommended it as a suitable place for treatment of the disease with which he was afflicted, stated that he was very nervous and depressed. and that in cases like his physicians always feared suicide by the patient. Thomas Hignite testified that, when he took his father to the sanitorium, in the course of a conversation between him and Dr. Render, who was inquiring as to the history of his father's case, he asked the doctor how long he thought his father would have to stay there; and that Dr. Render said in response that he had not any way to tell, but that cases of this kind generally either got well right away or else destroyed themselves. The testimony from all of the witnesses, including the medical agents of the defendant sanitorium, was to the effect that the patient was extremely nervous and depressed and talked continually about his financial losses and his wife's loss of health. Dr. Gardner, one of the consulting physicians of the sanitorium, who saw deceased last, the day before his death, testified thus as to his condition:

"Mr. Hignite impressed me as being depressed. He showed in his conversation evidence of worry. He was quite clear, he knew exactly where he was, how long he had been there. In other words, he was not disoriented. If a man doesn't know where he is he is disoriented. He was perfectly clear and

well oriented. He was not confined to his room. He had the privilege of the floor, he went in and out of his room at will. He was in bed usually when I talked to him. I saw him on the floor. If I remember right, the last time I talked to him, the day before he committed suicide, he was in his room. He was clear, in every way, talked about having made a bad investment; he was worrying about that. His wife had been very ill, she wasn't in good health. I tried to reassure him, that perhaps things were not as bad as he might think. He said, 'These facts are real, doctor; I have just been unfortunate; I don't see how I am going to forget it. I am not sleeping well, I am worrying continously.' That was his trend. There were no delusions of any sort, no threats of suicide. He said he felt like he wasn't sleeping well; of course, he was growing some weaker on account of his worry and loss of sleep; appetite wasn't good at times. His conversation showed he was quite clear, rational, knew what he was doing."

It is to be observed that this physician, appellees' own agent, does not deny that from these symptoms a physician ordinarily skilled in the treatment of nervous and mental diseases should have anticipated that the patient was likely to commit suicide. The most that he said was that the patient did not threaten to commit suicide. The evidence establishes that the patient was confined to the third floor of the sanitorium building, and that, while two male attendants or guards were assigned to duty on that floor, when night came they went to their rooms and retired and were required to perform no service for any of the inmates unless especially called to do so. Mr. Hignite, in the condition in which he was shown to be, was in his room alone, and after 9 or 10 o'clock at night, when the guards retired, was left wholly alone with every opportunity to bring about his own destruction, the end which the testimony seems to tend to establish might have been expected in his case under the circumstances surrounding him.

The cause of action is rather inartfully stated in the petition. When analyzed, it seems to charge as the negligence relied upon for recovery the failure of appellees, after they discovered, or by exercise of ordinary care

should have discovered, that Mr. Hignite was in such condition that he might reasonably have been expected to commit suicide, to use that degree of care in having him watched to prevent him from doing so, which ordinarily skillful and prudent physicians engaged in the care and treatment of patients suffering as he was would have done. Under the pleadings as now constituted, and if, upon another trial, the evidence be the same, the court, in lieu of the first four instructions, will give the following:

"No. 1. If the jury believe from the evidence that the defendant Render or the other physicians or agents of defendant Louisville Neuropathic Sanitorium, who examined, observed, or treated M. G. Hignite, discovered, or by the exercise of reasonable skill and care should have discovered, that his condition was such while a patient at the sanitorium at any time before his death that it might reasonably be anticipated that he would commit or attempt to commit suicide, it was the duty of defendants to use that degree of care to have him watched or kept under observation to prevent him from doing so which ordinarily skillful, careful, and prudent persons engaged in caring for and treating persons in his condition would have used; and if under these circumstances, if you believe from the evidence they existed, you further believe from the evidence that defendants failed in the duty above defined, and that such failure, if any, was the proximate cause of said Hignite's death, the law is for the plaintiffs and you will so find; but unless you so believe, the law is for the defendants and you will so find."

Instruction No. 5, given, will be remodeled so as to define only the words "reasonable skill and care" used in the foregoing, and they, together with instructions Nos. 5, 7, 8, and 9, will be given as the law of the case.

For the reasons indicated, the judgment herein is reversed and the cause remanded, with direction that appellant be granted a new trial, and for other proceedings consistent herewith.

Whole court sitting.