FOWLER, ADMINISTRATRIX *v.* NORWAYS SANATORIUM ET AL.

[No. 16,814. Filed June 17, 1942. Rehearing denied October 21, 1942. Transfer denied November 30, 1942.]

*V. H. Manifold* and *Judson L. Stark,* both of Indianapolis, *James A. Jones,* of Bicknell, and *John A. Kendall,* of Danville, for appellant.

*James L. Murray* and *Frank H. Fairchild,* both of Indianapolis, for appellee.

BEDWELL, J.—By this action the appellant, Elma Fowler, administratrix of the estate of Peter B. Fowler, deceased, sought to recover damages alleged to have resulted to the widow and minor children of her decedent because of his wrongful death. Appellant claimed

that his death resulted because of negligent acts of the appellees, Norways Sanatorium and Carl Jones, and of their codefendant Dr. Philip B. Reed, in failing to care for, guard, safeguard, and protect him while he was a patient at such sanitorium.

At the close of the introduction of appellant's evidence, the appellees and Dr. Reed moved the court for a directed verdict, which motion was sustained, and the jury was instructed to and did return a verdict for all· of the defendants. The action of the trial court in giving such peremptory instruction is the error upon which appellant relies for reversal.

After the filing of appellant's brief the action against Dr. Philip B. Reed was dismissed by appellant.

·The amended complaint of appellant alleged in substance the following facts:

That Peter B. Fowler died intestate at Indianapolis, Indiana, on August 8, 1939, and left him surviving his widow, Elma F. Fowler, and his four minor children, all of whom were wholly dependent upon him for support; that the defendant, Norways Sanatorium, is a corporation engaged in the business of treating and caring for persons suffering from mental and nervous disturbances, and that it is an institution equipped with doctors, nurses, attendants, assistants and guards. That on August 5, 1939, Peter B. Fowler was taken to such sanitorium for entry as a patient and was received and examined by Dr. Philip B. Reed; that thereupon he was accepted as a patient for treatment. That on Tuesday, August 8, 1939, appellee Norways Sanatorium, and Dr. Reed caused the appellee Carl Jones, who was an attendant and employee of Norways Sanatorium, who had been assigned to the care and supervision of Peter B. Fowler, to take him to the office of a doctor on the seventh floor of the Hume-Mansur building in the

City of Indianapolis so that certain X-ray pictures could be made; that while in such office Peter B. Fowler eluded his attendant and guard and leaped through an open window and plunged to the street below causing his death. It is alleged that at the time Fowler entered the sanitorium he had suicidal tendencies and on two previous occasions had attempted to commit suicide, which facts were known to Dr. Reed and the appellees, Norways Sanatorium and Carl Jones.

The essentials of the negligence charged in the amended complaint may be summarized as follows: Negligence of each of the defendants in taking Peter B. Fowler from a safe place to an extra dangerous place, namely, the X-ray offices of Dr. Beeler, which were on the seventh floor of the Hume-Mansur building, where there were open and unprotected windows, with only one guard and without extra precautions for his safety; and negligence in guarding and protecting him while he was in such X-ray offices.

There is practically no conflict in the testimony introduced by appellant to sustain the allegations of her complaint. The evidence showed that Fowler was taken to the Norways Sanatorium because he was suffering from mental depression and had twice attempted to commit suicide. The arrangements for his entry were made by his brother, a sister, and his wife. When he arrived at the institution he was examined by Dr. Reed, who was a resident physician of the sanitorium, but who was also engaged in the private practice of neurology and psychiatry. Assurances were given by Dr. Reed that there were facilities at the sanitorium for the care of the patient, and that he did not think it would be necessary for him to remain there for a long period and that he felt that his condition could be improved. A charge of $115 for the first week's treat-

ment was specified by the sanitorium and this was paid. Arrangements were made for constant guarding of the patient and this work was assigned to the appellee Carl Jones, who was twenty-three years of age, had gone to high school for two years and had gone to the sanitorium to work about three months previous to the entrance of Fowler. This attendant was on twenty-one hour duty with Fowler and he had been informed that he had suicidal tendencies and that he must watch him closely.

On August 8, 1939, Jones took Fowler to Dr. Beeler's office on the seventh floor of the Hume-Mansur building at the direction of Miss Bryan, head nurse at the sanitorium. She told him to take him there in a cab and the office furnished the money. Miss Bryan directed Jones to watch him closely. Jones testified that he did not recall Dr. Reed talking to him at all that day and that no one suggested that he have an assistant or that he use any device to keep the patient under control, and that he used none. Jones took the patient to the seventh floor of the Hume-Mansur building and after arriving there the patient removed his shirt and was taken into the X-ray room for chest and sinus pictures, and then to the dental X-ray room where the nurse took an X-ray of his teeth. At this time the attendant had a chair nearby and just south of a door that led to a hall and about two feet from the patient. Fowler arose from the chair apparently to stretch and then suddenly turned, dashed through the door to a middle room, slamming the door behind him. When the attendant got through the door and into the middle room Fowler was going through a large open window. The attendant grabbed his trouser cuff but could not restrain him, and Fowler fell to the sidewalk below, the fall causing his death.

The two questions involved in this appeal may be stated as follows:

1. Was there any evidence from which a jury might properly have determined that the acts of Norways Sanatorium and of Carl Jones, its attendant, in taking appellant's decedent to the seventh floor of the Hume-Mansur building, or their acts in guarding and protecting him while he was there located, were administrative or ministerial acts of the sanitorium instead of medical acts of Dr. Philip B. Reed ·in connection with his treatment of decedent?

2. If such acts of Norways Sanatorium and its attendant were administrative or ministerial acts for which the sanatorium and its attendant would be liable if negligently performed, is there sufficient evidence. of negligence in the performance thereof to permit the case to be submitted to a jury?

It was stipulated by the parties that the appellee Norways Sanatorium was a private corporation operating for profit. This is of much importance for different principles are applied in determining the liability of hospitals or sanatoriums for their torts when the hospital or sanatorium is a public or charitable institution, than are applied when it is a private institution conducted for profit.

It will not be necessary for us to discuss the applicable rules when a cause is taken from a jury at the close of plaintiff's evidence and a motion of the defendant for a directed verdict is sustained. For a discussion thereof we call attention to the cases of *Montfort* v. *Indianapolis, etc., Traction Co.* (1920), 189 Ind. 683, 686, 128 N. E. 842, and *Tabor* v. *Continental Baking Company* (1942), 110 Ind. App. 633, 38 N. E. (2d) 257.

A corporation or an individual, which is the owner or proprietor of a private hospital or sanatorium which is operated for profit and not as a charity, is liable in damages for injuries to its patients proximately resulting from the negligence of its officers or employees while performing administrative or ministerial acts. 26 Am. Jur., Hospital and Asylums, § 14, p. 595, and cases there cited; *Stuart Circle Hosp. Corp.* v. *Curry* (1939), 173 Va. 136, 3 S. E. (2d) 153, 124 A. L. R. 176; Annotation in 124 A. L. R. on p. 186; *Hendrickson* v. *Hodkin* (1937), 276 N. Y. 252, 11 N. E. (2d) 899; Annotations in 22 A. L. R. 341 and 39 A. L. R. 1431.

While a hospital or sanatorium conducted for private gain is not an insurer of its patients against injuries inflicted by them, it is required to use ordinary care in the treatment and care thereof. In determining ordinary care in such cases it is proper to consider the physical and mental ailments of the patient which may affect his ability to look after his own safety. *Hawthorne* v. *Blythewood, Inc.* (1934), 118 Conn. 617, 174 A. 81; *Flower Hospital* v. *Hart* (1936), 178 Okla. 447, 62 P. (2d) 1248; *Stansfield* v. *Gardner* (1937), 56 Ga. App. 634, 193 S. E. 375; *Smith* v. *Simpson* (1926), 221 Mo. App. 550, 288 S. W. 69; *Maki* v. *Murray Hospital* (1932), 91 Mont. 251, 7 P. (2d) 228; *Hignite's Admrx.* v. *Louisville Neuropathic Sanitorium* (1928), 223 Ky. 497, 4 S. W. (2d) 407; *Dahlberg* v. *Jones* (1939), 232 Wis. 6, 285 N. W. 841.

In the case of *Iterman* v. *Baker* (1938), 214 Ind. 308, 316, 318, 15 N. E. (2d) 365, the Supreme Court of this State held that a hospital corporation could not legally practice medicine, and that it could not make a contract to practice medicine through licensed physicians and surgeons as its agents. The court held that it could

make a legal contract to furnish a physician or surgeon, but that in such a case the physician or surgeon furnished, acted as an independent contractor. In the particular case it was held by the court that a patient could not maintain an action against the hospital for alleged malpractice of physicians, who were employed by the hospital and furnished by it to the patient, in the absence of an allegation or proof of negligence in the selection of the physicians furnished. In its opinion the court says:

". . . The right to practice medicine is, in this state, controlled by statute. It is held in some jurisdictions that corporations may legally engage in the practice of medicine and surgery. The question involves the consideration and construction of local statutes. Under the statutes of this state it has never been doubted that it is unlawful for a corporation to practice medicine, and any contract made in the name of a corporation, binding it to diagnose or treat ailments or diseases, is not only *ultra vires,* but unlawful and against public policy. The right to practice medicine and surgery under a license by the state is a personal privilege. It cannot be delegated, and a corporation, or other unlicensed person, may not engage in the practice of medicine by employing one who is licensed to do the things which constitute practicing the profession. . . .

". . . The appellee came to the hospital, talked to Dr. Iterman, and was treated by him with the assistance of two other doctors. Nothing was said as to whether the services were to be rendered by the doctor or by the corporation. The doctor was a stockholder and director in the corporation. Are these facts such as to necessarily imply a contract by which the corporation agreed to diagnose and treat the appellee's ailments? The facts justify the conclusion that the corporation charged and collected for the use of its hospital facilities and equipment, and for furnishing the services of licensed and qualified physicians and surgeons. Under such a contract the duty of the corporation,

in respect to the physicians or surgeons, would be complied with by using reasonable and ordinary care to employ reasonably qualified, reputable, licensed physicians. In such a case the physicians or surgeons are independent contractors. . . ."

In the case for determination, the brother of appellant's decedent made arrangements for his treatment at Norways Sanatorium. Nothing was said as to what services were to be performed by Dr. Reed and what services were to be performed by the sanatorium. Dr. Reed testified that Fowler was his private patient, and we believe that the evidence justifies the conclusion that appellant's decedent was under the charge of Dr. Reed as an independent contractor for diagnosis and treatment of his mental condition; but that he was under the change of Norways Sanatorium for care, protection, and the customary hospitalization of an institution that treats mental and nervous disturbances.

The appellee contends that since Dr. Reed gave an order to the head nurse of the sanitorium that Fowler be taken to the Hume-Mansur building for X-ray pictures, that the protection and guarding of Fowler while he was located in the Hume-Mansur building, and the act of the head nurse of the hospital in directing that he be taken to such a place under charge of one attendant, were all medical acts connected with the treatment of the patient by Dr. Reed; and that the sanitorium or its attendant could not be liable for any negligence in the performance thereof.

We appreciate the fact that it is quite often most difficult, when a physician is in charge of all the medical or surgical work carried on at a hospital or sanatorium and he gives orders or directions concerning the treatment of patients, to determine when the acts of the employees of the hospital or sanatorium are medical

acts assisting the physician or surgeon in the treatment of his patient, or administrative or ministerial acts of the hospital itself in carrying out its contract with the patient. ·

In this jurisdiction where a sanatorium or hospital has no right to engage in the practice of medicine, and where physicians and surgeons although employed by it cannot engage in the practice of medicine or surgery as its agents, it is apparent that many anomalous · situations will arise if the customary and routine acts of hospital employees are designated as medical acts instead of administrative or ministerial acts of the hospital or sanatorium.

· ·A private hospital or sanatorium operated for profit and holding itself out to the public as equipped to furnish hospital service, should be liable for the negligent acts of its employees who are acting under its supervision and control in the performance of their routine duties. If the negligence resulting in injury to a patient was in fact that of an independent physician or surgeon, the hospital in which the patient was under treatment is not and should not be liable. In determining whether the negligence was the negligence of the hospital or sanatorium, or of the physician or surgeon who was treating the patient, the nature of the act performed, and whether it was performed by a servant of the hospital or sanatorium, or a servant of the physician or surgeon, should be of value in reaching a correct determination.

In the case of *Underwood* v. *Scott* (1890), 43 Kan. 714, 717, 23 P. 942, 943, the court defines the practice of medicine as follows:

"The practice of medicine may be said to consist in three things: First, in judging the nature, character and symptoms of the disease; second, in determining the proper remedy for the disease;

third, in giving or prescribing the application of the remedy to the disease."

A direction to have an X-ray picture taken is not a medical act that would cause the person giving the order to be guilty of the offense of practicing medicine without a license. Insurance agents and others quite often give such directions and in doing so they are not practicing medicine. The guarding and protection of patients suffering from mental disease is not a medical act and it is not necessary to have a license to practice medicine to perform such acts. The fact that a physician directs or orders such an act does not make it a medical act. Reed was an administrative officer of the sanitorium as well as a physician. We know of no reason why he, as an officer of the sanatorium, could not direct the performance of routine duties by its employees, and the fact that he was a physician or that the duties were connected with the care of his private patient would not necessarily make the acts of the employees medical acts.

For precedents in other jurisdictions which are of value in determining whether the act of employees of a hospital or sanatorium are medical acts or administrative or ministerial acts of the hospital itself, we call attention to the following: *Stuart Circle Hosp. Corp.* v. *Curry* (1939), 173 Va. 136, 3 S. E. (2d) 153; *Post* v. *Crown Heights Hospital* (1940), 17 N. Y. S. (2d) 409, 173 Misc. 250; *Tate* v. *McCall Hospital* (1938), 57 Ga. App. 824, 196 S. E. 906; *Maki* v. *Murray Hospital* (1932), 91 Mont. 251, 7 P. (2d) 228; *South Highlands Infirmary* v. *Galloway* (1936), 233 Ala. 276, 171 So. 250; Annotations in 22 A. L. R. 347, 39 A. L. R. 1433 and 124 A. L. R. 195.

Appellant is relying upon the case of *Mills* v. *Society of New York Hospital* (1934), 242 App. Div. 245, 274

N. Y. S. 233, affirmed by Circuit Court of Appeals in 1 N. E. (2d) 346. Such opinion should be read in connection with *Post* v. *Crown Heights Hospital, supra.* Such case is distinguishable from the case for determination. In *Mills* v. *Society of New York Hospital, supra,* the defendant was a charitable institution which was not liable for the negligence of its employees in the treatment of its patients. The court there held that the claimed negligent act was medical treatment of a patient. Here the direction of the head nurse of Norways Sanatorium to the appellee, Carl Jones, to take appellant's decedent to the office of Dr. Beeler on the seventh floor of the Hume-Mansur building, and the acts or omissions of Carl Jones as an attendant and employee of the sanatorium in guarding or protecting him while he was being so taken and while he was so located, were routine administrative or ministerial acts of the hospital itself and in no sense medical acts, and for any negligence in the performance thereof the sanatorium, and if the negligent act or omission was an act or omission of its attendant, the attendant also, would be liable.

The evidence was such that the minds of reasonable men could differ as to whether under all the conditions and circumstances it was negligent to send appellant's decedent to the seventh floor of the Hume-Mansur building with only one guard and where there were a number of open windows, and conditions were such that he might be injured in attempting to escape. Also, under the conditions and circumstances the minds of reasonable persons could differ as to whether the attendant and his employer took proper precautions for guarding him while he was located in the X-ray offices. Under such conditions the trial court erred in taking the case from the jury at the close of

plaintiff's evidence and in directing a verdict for the defendant.

The judgment is reversed with direction to the trial court to sustain appellant's motion for a new trial as against the appellee, Norways Sanatorium and Carl Jones, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 41 N. E. (2d) 819.