## UNITED STATES v. GRAY.

### No. 4445.

United States Court of Appeals
Tenth Circuit.

Oct. 6, 1952.

Clifford C. Chittim, Asst. U. S. Atty., Boulder, Colo. (Charles S. Vigil, U. S. Atty., and Henry E. Lutz, Asst. U. S. Atty., Denver, Colo., on the brief), for appellant.

Elwood M. Haynie, Colorado Springs, Colo., and David H. Morris, Denver, Colo., for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This is an action instituted under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–2680, to recover damages for personal injuries. After issues were joined and evidence was adduced, the court found among other things that plaintiff was the wife of an enlisted member of the armed forces of the United States; that she was also a veteran, having served in the Women's Army Corps, from which she received a medical discharge in 1944; that on August 1, 1947, she was a patient in an army hospital at Camp Carson, Colorado; that she occupied a room on the second floor of the building in which she was

quartered; that she had been and was then suffering from an ailment diagnosed as neurotic, depressive reaction, chronic, severe, manifested by suicidal thoughts and intent; that the defendant was fully aware of her mental condition; that a guard was posted at the door of the room occupied by plaintiff with instructions to watch her constantly; that plaintiff manifested signs of mental derangement by smashing a water glass and attempting to put pieces of the broken glass in her mouth but was prevented from doing so by the guard; that after the incident, she cried at length and acted depressed and agitated; that a window in her room was open for ventilation and no steps were taken to fasten it or make it secure; that by leaving the room without anyone remaining to keep watch of plaintiff, the medical officer in charge of the ward, or the guard, or both of them, failed to give her the constant care and attention necessary for her welfare; that while all members of the personnel were absent from the room, plaintiff jumped or fell from the window of her room to the ground outside; that she sustained injuries which resulted in the complete paralysis of her body from the chest area downward; that she was totally disabled; and that her condition was permanent. Judgment was rendered for plaintiff in the sum of $66,360, representing a base sum of $75,000 less $8,640 which had been paid her. The Government appealed.

■ The judgment is challenged on the ground that plaintiff did not have any right to enter the army hospital; that the personnel at the hospital were not acting within the scope of their duties as agents or employees of the United States in caring for her welfare or in failing to do so; and that therefore the United States is not liable under the Tort Claims Act. It is said that the hospital was not one for the care and treatment of mental patients; that plaintiff was not entitled to be admitted to it; and that in treating and caring for her, the agents and employees of the United States were not acting within the scope of their duties. Army Regulations No. 40–590 provides among other things that sick wives of enlisted men in the armed forces may be admitted to army hospitals when suitable facilities for hospitalization are available. The hospital in question was not designed specially for the care and treatment of mental patients. And it may be conceded without so deciding that when plaintiff sought admittance for care and treatment, the managerial authorities of the hospital were vested with full power to decline to admit her as a patient on the ground that suitable facilities were not available. But she was admitted, and admitting her amounted to a determination on their part that suitable facilities were available for her. Having decided that there were facilities available and having accepted her as a patient, the personnel at the hospital acted within the scope of their duties or employment in treating and caring for her. And any negligent act or omission on their part in the discharge of such duties which proximately caused injury to plaintiff rendered the Government liable under the Tort Claims Act. Costley v. United States, 5 Cir., 181 F.2d 723.

■ The judgment is challenged on the further ground that it was wholly discretionary with the authorities at the hospital whether a guard should be placed over plaintiff; that having exercised that discretion by placing the guard at her door, it was equally a matter of discretion whether he should be withdrawn, either temporarily or permanently, even though his withdrawal amounted to a mistake of judgment; and that the Government is not liable even though the medical officer in charge of the ward, or the guard, or both, left the room with no one remaining to keep watch over plaintiff and care for her welfare. The Tort Claims Act provides in presently pertinent part that it shall not apply to any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. 28 U.S.C. § 2680(a). While it was within the discretion of the managerial authorities at the hospital to determine in the first instance whether suitable facilities were available for the care and treatment of plaintiff

having decided that such facilities were available and having admitted her, the Government was not authorized to exercise in an unbridled manner and without due regard for the known facts and circumstances a plain and clear duty or function in respect to her care and treatment, with complete immunity under the Act from liability for negligence in connection therewith proximately resulting in personal injury to plaintiff. Costley v. United States, supra.

■ The further attack upon the judgment is that the Government was not an insurer of plaintiff; that all reasonable precautions and those customary in like instances were taken by the attendants at the hospital in caring for plaintiff; and that there was a complete lack of evidence showing negligence as a proximate cause of the accident and resulting injury to plaintiff. Under the Tort Claims Act, the Government is liable in damages for personal injuries caused by the wrongful act or omission of its agents or employees while acting within the scope of their employment under circumstances in which the United States if a private person would be liable to the claimant in accordance with the law of the state wherein the act or omission occurred. In other words, the Act subjects the United States to liability for a tort of that kind in the same manner and to the same extent that a private individual would be liable in like circumstances. United States v. Gaidys, 10 Cir., 194 F.2d 762. It is the general rule that while a hospital conducted for gain is not an insurer of the safety of its patients against personal injuries, whether self inflicted or otherwise, it is required to exercise ordinary care for their welfare and safety against such injuries. No inflexible and unyielding yardstick can be laid down as constituting ordinary care or the lack of it in all cases. In each case, the question must be determined in the light of its own facts and circumstances. In determining what constitutes ordinary care, the condition of the patient should be taken into consideration. And in the case of a mental patient, the care must be reasonably adapted and proportioned to his known suicidal, homicidal, or other like destructive tendencies. Wetzel v. Omaha Maternity & General Hospital Association, 96 Neb. 636, 148 N.W. 582; Torrey v. Riverside Sanitarium, 163 Wis. 71, 157 N.W. 552; Paulen v. Shinnick, 291 Mich. 288, 289 N.W. 162; Hawthorne v. Blythewood, Inc., 118 Conn. 617, 174 A. 81; Fowler v. Norways Sanitorium, 112 Ind.App. 347, 42 N.E.2d 415; Maki v. Murray Hospital, 91 Mont. 251, 7 P.2d 228.

■ Plaintiff had been a patient in the army hospital at Camp Carson on a previous occasion. On that occasion she was sent from that hospital to Colorado Springs Psycopathic Hospital for treatment. She was a patient at the latter institution for approximately two months, and while there she was given electric shock therapy. After being in the psycopathic institution for about two months, she left against medical advice, went home, again went to the army hospital, and sought further treatment for her mental condition. On the first night after her admittance, she had hallucinations, was depressed, cried, was given a sedative, and a guard was called. The accident in question took place the next night. Shortly preceding the accident, plaintiff became agitated; and she was abusive, unruly, and depressed. After breaking a water glass and attempting to put pieces of the broken glass in her mouth, she cried for a time. The medical officer in charge of the ward was called and he administered a sedative. She was quieted somewhat, but the guard was directed to move his chair inside the room and watch her constantly. She again became agitated and abusive, and the medical officer in charge of the ward was called a second time. With all of these antecedent facts and circumstances known, the medical officer and the guard left the room occupied by plaintiff without any attendant being there to watch her and care for her welfare. It is not clear which of the two left first. But in any event, they were both absent; and it was during their absence and while unattended that plaintiff fell or jumped from the window and was injured. In view of all the facts and circumstances, the leaving of plaintiff in the room alone

and unattended constituted negligence on the part of the agents and employees of the Government. University of Louisville v. Hammock, 127 Ky. 564, 106 S.W. 219, 14 L.R.A.,N.S., 784; Arlington Heights Sanitarium v. Deaderick, Tex.Civ.App., 272 S.W. 497; Hawthorne v. Blythewood, supra; Wetzel v. Omaha Maternity & General Hospital Association, supra; Paulen v. Shinnick, supra; Fowler v. Norways Sanitorium, supra.

■ The amount of the judgment was based in large part upon loss of earnings of plaintiff. In its findings of fact, the court expressly referred to the last employment of plaintiff prior to her injuries being at the rate of $1,900 per year for regular clerical work and to $1,000 per year in addition for part-time employment, or a total of $2,900. And the court also referred to her previous employment at the pay rate of $1,440 per year for clerical work and an additional $60 per month for part-time work, or a pay scale of $2,160 per year. Plaintiff's last gainful employment prior to her injuries was in 1945. From September until November of that year, she worked as a clerk at the Army Supply Depot in Ogden, Utah, at a pay scale of $1,902 per year; and in addition, she had part-time employment in a bakery for which she received $15 or $20 per week. Prior to that time, she had been employed in a clerical capacity in one or two other federal agencies and she had other part-time employment. But she was not gainfully employed after November, 1945. Her mental faculties became seriously impaired not later than sometime in 1946. In the latter part of that year she realized that something was terribly wrong with her. Her behaviour was very abnormal about Christmas of that year. And in April or May, 1947, she voluntarily sought medical treatment for her mental condition. In an action for personal injuries in which plaintiff relies upon loss of earnings as an element of damages, the amount which he might have earned in the future is always uncertain; and in the very nature of things it must be left in large measure to the sound judgment of the jury, or the court in a case tried without a jury. But the ver-

dict or finding must be based upon something more than conjecture. It must be an intelligent determination based upon the facts and circumstances disclosed at the trial. The difference in the earnings of plaintiff before and after the injury constitutes the best indication of the economic value of his loss in the form of impairment of capacity for earning. And the extent of the diminution or impairment of earning capacity is to be arrived at by comparing what the plaintiff was capable of earning at the time of the injury with that which he was capable of earning after it occurred. It is crystal clear that due to her mental illness, plaintiff's earning capacity was greatly diminished, if not completely extinguished, prior to her physical injury. When it developed in the course of the trial that she had suffered a serious mental illness prior to her physical injuries, insofar as recovery for loss of earnings was concerned, it was incumbent upon her to show her earning capacity, if any, after her mental facilities became impaired and prior to her physical injuries. But no evidence was offered having any relation to her earning capacity after she became mentally ill. And on failure of plaintiff to adduce evidence tending to show her earning capacity, if any, after the intervention of her mental illness, there was no sustainable basis of fact on which to predicate damages for loss of earnings.

■■ In its answer, the Government pleaded that ever since the occurrence of the disability alleged in the complaint, plaintiff has been hospitalized and treated by the Government for her alleged injuries; that such hospitalization and treatment would continue so long as necessity therefor continued; and that the approximate cost to the Government of such care and treatment was $400 ($750) per month. On the trial of the case, the Government offered in evidence a letter from the Acting Chief Attorney for the Veterans Administration to the Assistant United States Attorney for Colorado, transmitting a copy of a memorandum over the signature of a member of the medical staff of the Veterans Administration in which it was stated in substance that, according to a sur-

vey made by the Budget and Planning Division of the Paraplegic Service, the cost of the hospitalization and treatment of plaintiff during the fiscal year 1948 was $26.7078 per day, and that such cost during the fiscal year 1949 was $27.5988 per day. At the time of offering the documents it was explained that the purpose of the evidence was to offset the amounts expended against any recovery which plaintiff should obtain. The evidence was excluded and error is predicated upon that action. The Veterans Administration furnished to plaintiff the hospitalization and treatment under legislation wholly separate and distinct from the Tort Claims Act. Our attention has not been called to any provision in the Tort Claims Act or in the legislation relating to hospitalization and treatment furnished by the Veterans Administration which indicates that Congress intended for recovery under the Tort Claims Act to be offset or diminished by amounts expended in furnishing hospitalization and treatment for disability. And in the complete absence of an express or clearly implied intent on the part of Congress that such an offset or diminution should be made, it is not the function of this court to effectuate it by judicial fiat. Since the cost of hospitalization and treatment furnished plaintiff could not be asserted by way of offset or diminution of any amount to which plaintiff was entitled under the Tort Claims Act, tendered evidence was properly excluded.

Finally, the Government contends that the court erred in refusing to deduct from the amount awarded plaintiff payments of sixty dollars per month made to her. Plaintiff testified that since July 1, 1949, she had been and was being paid sixty dollars per month for total, non-service connected disability. No other evidence was adduced relating to such payments. And the amount awarded plaintiff was not diminished by the amount of these payments. In its brief, the Government stated that the payments were made under 38 U.S.C.A. §§ 706, 706b, 739. But in a letter addressed to the clerk of this court the Government stated that the payments were made under the Act of May 27, 1944, 58 Stat. 230, 38 U.S.C.A. following section 745, and the Act of August 8, 1946, 60 Stat. 908, 909, 38 U.S.C.A. §§ 471a–3, 739, as a pension for total-permanent disability not connected with military service. The Act of May 27, 1944, speaks of pensions payable under a certain Veterans Regulation; and the Act of August 8, 1946, speaks of pension, compensation, or retirement of veterans. Whatever the nomenclature, the payments to plaintiff were essentially compensation for her disability. And to compensate her in full by lump-sum judgment under the Tort Claims Act for her total and permanent disability, and in addition compensate her by monthly payments for her disability, would constitute double payment pro tanto for such disability. Any award of damages to which plaintiff is entitled under the Tort Claims Act should be diminished by the $8,640 paid her, as was done by the trial court; by the aggregate of the monthly payments of $60 already made to her; and by the present cash value of the payments to be made to her in the future. United States v. Brooks, 4 Cir., 176 F.2d 482.

The judgment is reversed and the cause is remanded for further proceedings not in conflict with the views herein expressed.