**SOUTH BEND OSTEOPATHIC HOSPITAL, INC., Defendant–Appellant,**

v.

**Carl C. J. PHILLIPS and Pearl E. Phillips, Plaintiffs–Appellees.**

**No. 3–279A32.**

Court of Appeals of Indiana, Third District.

Sept. 30, 1980.

Rehearing Denied Dec. 8, 1980.

Roland Obenchain, South Bend, for defendant–appellant.

Lawrence C. DiNardo, Thornburg, McGill, Deahl, Harman, Carey & Murray, South Bend, for plaintiffs–appellees.

GARRARD, Presiding Judge.

The appellees, Carl Phillips and his wife, brought this action against South Bend Osteopathic Hospital, Inc. for damages occasioned by an injury to Mr. Phillips while he was a patient at the hospital.[1] The claim alleged that Phillips was injured through the negligent administration of a hypodermic injection by a registered nurse who was in the regular employ of the hospital. The case was tried by jury and resulted in a judgment for the plaintiffs.

On appeal the principal contention of the hospital is that it cannot be held liable for the negligent act of one of its nursing staff in administering a hypodermic. It argues that giving such an injection is within the definition of the practice of medicine contained in IC 25–22.5–1–2. It then argues that since a hospital corporation is not authorized to practice medicine, it cannot be liable for the acts of its regular fulltime employees who are so licensed. In support it cites *Fowler v. Norways Sanitorium* (1942), 112 Ind.App. 347, 42 N.E.2d 415 and *Keene v. Methodist Hospital* (N.D.Ind.1971), 324 F.Supp. 233.

We are unable to agree with the hospital's broad statement of the rule of non–liability or its mechanical application which, according to appellant, should look only to see whether a complained–of activity falls within the definition of the practice of medicine.[2]

We have no quarrel with the legislative determination that hospitals, as such, are not entitled to engage in the practice of medicine in the sense of prescribing a course of treatment or exercising discretionary medical judgment in the diagnosis and care of patients. *See* IC 16–10–1–8.

However, it does not follow that a hospital cannot, or should not, be accountable to its patients for the negligent acts of its regular employees engaged in the regular performance of their duties.

1. This case arose prior to the enactment of the Medical Malpractice Act, IC 16–9.5–1–1 et seq.

2. IC 25–22.5–1 cited by appellant was originally enacted by Acts 1975, P.L. 271, § 1 and in salient part defines the practice of medicine to include,

"(1) Holding oneself out to the public as being engaged in the diagnosis, treatment, correction or prevention of any disease, ailment, defect, injury, infirmity, deformity, pain or other condition of human beings, or the suggestion, recommendation or prescription or administration of any form of treatment, without limitation, or the performing of any kind of surgical operation upon a human being, including tattooing, or the penetration of the skin or body orifice by any means, for the intended palliation, relief, cure or prevention of any. physical, mental or functional ailment or defect of any person."

At the time of Phillips' injury in 1974 the relevant statute, IC 25–22–1–7 [repealed] defined the practice of medicine as,

"To open an office for such purpose or to announce to the public in any way a readiness to practice medicine in any county of the state, or to prescribe for, or to give surgical assistance to, or to heal, cure or relieve, or to attempt to heal, cure or relieve those suffering from injury or deformity, or disease of mind or body, or to advertise, or to announce to the public in any manner a readiness or ability to heal, cure or relieve those who may be suffering from injury or deformity, or disease of mind or body, ... Provided, further, that this act shall not be construed to apply to ... professional nurses or other nurses ...."

The earliest Indiana decision in this case appears to be that of *Iterman v. Baker* (1938), 214 Ind. 308, 15 N.E.2d 365, which, perhaps significantly, was decided when the law of this state provided either governmental or charitable immunity for the benefit of many hospitals. *See, e. g., St. Vincent's Hospital v. Stine* (1924), 195 Ind. 350, 144 N.E. 537, and *Harris v. YWCA* (1968), 250 Ind. 491, 237 N.E.2d 242 where the charitable immunity doctrine was overruled.

In that case Baker brought suit against the two physicians who had treated him alleging they negligently failed to diagnose and treat his broken hip. In addition, he sued the hospital alleging that it contracted to diagnose and treat his injury. The Supreme Court upheld the judgment against Dr. Interman but held that the trial court should have sustained the hospital's demurrer to the complaint against the hospital. In so holding the court noted that hospitals were prohibited from practicing medicine and that physicians should not accept directions and instructions from a corporation in diagnosing and treating ailments. Thus, said the court, it would not only be ultra vires but against public policy to allow recovery against a hospital *on the theory* that it contracted to cure its patients. The doctrine of respondeat superior was not involved since the doctors were independent contractors. 15 N.E.2d at 370.

In *Huber v. Protestant Deaconess Hospital* (1956), 127 Ind.App. 565, 133 N.E.2d 864, the trial court had directed a verdict in favor of the hospital and a physician–anesthetist where it was alleged that the physician had been negligent in administering a spinal anesthetic. The appellate court reversed as to the physician but affirmed as to the hospital. In doing so the court cited *Iterman* and stated that,

"... [T]he duty of a hospital corporation, *in respect to physicians and surgeons,* would be complied with by using reasonable and ordinary care to employ reasonably qualified, reputable, licensed physicians, and in such cases the physi-

cians or surgeons are independent contractors." (Our emphasis) 133 N.E.2d 870.

Earlier, in the case of *Fowler v. Norways Sanitorium* (1942), 112 Ind.App. 347, 42 N.E.2d 415, the appellate court considered a case where a mental patient was taken to the seventh floor of a building in Indianapolis for x-rays. He was not closely attended by the sanitorium employee who accompanied him and leaped through a window to his death. The trial court directed a verdict for the employee and the sanitorium. The appellate court reversed. It cited *Iterman* for the proposition that a hospital corporation could not legally practice medicine, and noted that,

"In this jurisdiction where a sanitorium or hospital has no right to engage in the practice of medicine, and where physicians and surgeons although employed by it cannot engage in the practice of medicine or surgery as its agents, *it is apparent that many anomalous situations will arise if the customary and routine acts of hospital employees are designated as medical acts* instead of administrative or ministerial acts of the hospital or sanitorium."

*A private hospital* or sanitorium operated for profit and *holding itself out to the public as equipped to furnish hospital service should be liable for the negligent acts of its employees who are acting under its supervision and control in the performance of their routine duties."*

(our emphasis) 42 N.E.2d 419.

It is thus apparent that the court felt the controlling factor is not whether a particular act falls within what may be included in the definition of "practicing medicine." Rather the consideration focuses upon the circumstances in question: the nature of the act; was it performed by a hospital employee; was it routine in nature? *See also Keene v. Methodist Hospital* (N.D.Ind.1971), 324 F.Supp. 233 where the court found the hospital liable for the actions of its radiologist in failing to communicate information to the attending physician that the radiologist should have observed on the x-rays.

Similarly, other jurisdictions have treated the actions of a nurse in negligently administering a hypodermic injection as creating a basis for liability against a hospital under the doctrine of respondeat superior despite the fact that the hospital entity was prohibited from practicing medicine. *See, e. g., Su v. Perkins* (1974), 133 Ga.App. 474, 211 S.E.2d 421; *Barnes v. St. Francis Hospital & School of Nursing, Inc.* (1973), 211 Kan. 315, 507 P.2d 288; *Bernardi v. Community Hospital Assoc.* (1968), 166 Colo. 280, 443 P.2d 708; *Graham v. St. Luke's Hospital* (1964), 46 Ill.App.2d 147, 196 N.E.2d 355.[3]

■ In the case before us it appears that the injection was administered on prescription by the physician by a licensed nurse regularly employed by the hospital and that it was her normal and usual duty to administer such injections. Under the circumstances present the hospital could properly be found liable.

■ The hospital's remaining argument is that the verdict was contrary to law because there was no credible evidence of the nurse's negligence. The essence of the argument is that the jury should have believed the nurse's assertion that the injection was given in the buttocks, rather than Phillips' testimony that it was administered in his left arm. We believe this question of credibility was for the jury to resolve. They having resolved it in favor of Phillips, our duty on appeal is to affirm since we cannot say that no reasonable mind could have accepted Phillips' account.

Affirmed.

STATON and HOFFMAN, JJ., concur.

---

**3.** The *Bernardi* court disclosed the non sequitur in the hospital's position with these words: "If we were to rule that respondeat superior did not apply because the hospital is not licensed as a nurse, then it would seem to follow that an airline should not be liable for the negligence of its pilot because the airline is not licensed to fly an aircraft." 443 P.2d 713.