**Candace L. EMIG, Administratrix of the Estate of Agnes Busack, Deceased, Plaintiff-Appellant,**

v.

**PHYSICIANS' PHYSICAL THERAPY SERVICE, INC., Defendant-Appellee.**

**No. 3–281A55.**

Court of Appeals of Indiana,
Third District.

March 9, 1982.

Rehearing Denied May 5, 1982.

Saul I. Ruman, Hammond, for appellant.

T. Sherman McClean, Stults, Custer, Kutansky & McClean, Gary, Albert C. Hand, Hand, Muenich & Wilk, Hammond, for appellee.

HOFFMAN, Presiding Judge.

Candace Emig, acting as administratrix of the estate, appeals a negative judgment

on her claim for personal injuries suffered by Agnes Busack. The dispositive issue involves two instructions given by the trial court which Emig claims are erroneous.

While recovering from hip surgery, Agnes Busack, an 83-year-old patient, was undergoing physical therapy at the Munster Med-Inn. On May 3, 1977 Mrs. Busack, while restrained in a wheelchair, was taken to the physical therapy department of the Munster Med-Inn. Therapy was administered by agents of Physicians' Physical Therapy Service, Inc. After the therapy session was completed, Mrs. Busack was returned to her wheelchair but was left unrestrained and unattended. Mrs. Busack stood up, attempted to walk, and fell. Mrs. Busack suffered a broken hip during the incident.

At the trial, Louis Greenwald, president of the Indiana Chapter of the American Physical Therapy Association was called as an expert witness by Physicians' Physical Therapy Service, Inc. Over objection, Greenwald was permitted to testify that it was his opinion that reasonable care and skill had been used in the handling of Mrs. Busack. At the close of the trial, the following instructions, to which Emig objected, were given by the court:

"INSTRUCTION NO. 16

It is the duty of a physical therapist, or therapist's aide, in performing therapy upon a patient, to possess and use that degree of skill and learning ordinarily possessed and used by therapists or aides in similar practice, in the same or similar localities at the time of the treatment or service.

In deciding whether a therapist or aide possessed and used the degree of skill and learning required, you may consider only the evidence presented by those called as expert witnesses.

\*   \*   \*   \*   \*   \*

"INSTRUCTION NO. 18

A plaintiff may not recover for alleged malpractice in an action against a physical therapist service, whether he be a therapist's aide or a registered therapist, unless she proves by a preponderance of the evidence that the defendant therapist service deviated from the standards of practice utilized under like circumstances by the therapy services in the same or similar localities who treat the particular type of ailment or injury involved. In determining what the standard of practice is, you must consider only the expert testimony by the expert witnesses, including the defendants."

■ The underlying issue, crucial to the determination of this cause, is whether the decision not to restrain Mrs. Busack was a medical decision. In *Adkins v. Ropp* (1938), 105 Ind.App. 331, at 335, 14 N.E.2d 727, at 729, this Court stated rules applicable in medical malpractice cases as follows:

"In the absence of some countervailing circumstances, the general rule in malpractice cases is that, in determining whether the physician and surgeon has exercised ordinary skill and care in the diagnosis of the disease and treatment of the patient and the result obtained thereby, the jury must be guided solely by the testimony of physicians and surgeons because of the scientific nature and character of the questions usually involved in such cases, and the jury cannot set up standards of skill and care of its own."

*See also Worster v. Caylor* (1953), 231 Ind. 625, 110 N.E.2d 337; *Davis v. Schneider* (1979), Ind.App., 395 N.E.2d 283; *Cochrane v. Lovett* (1975), 166 Ind.App. 684, 337 N.E.2d 565,

When however, the matters at issue are within the common knowledge and experience of the jury, expert testimony regarding the exercise of reasonable care is improper and should be excluded. *Rosenbalm v. Winski* (1975), 165 Ind.App. 378, 332 N.E.2d 249. It also follows that if the decision not to restrain Mrs. Busack was a ministerial as opposed to a medical decision, this case is not premised on a medical malpractice theory, but rather, a common negligence theory to which the reasonable man standard must be applied.

■ *Fowler, Admx. v. Norways Sanatorium* (1942), 112 Ind.App. 347, 42 N.E.2d 415

is pertinent in determining if this decision was a medical decision. In *Fowler* this Court held:

"The guarding and protection of patients suffering from mental disease is not a medical act and it is not necessary to have a license to practice medicine to perform such acts. The fact that a physician directs or orders such an act does not make it a medical act. Reed was an administrative officer of the sanitorium [sic] as well as a physician. We know of no reason why he, as an officer of the sanatorium, could not direct the performance of routine duties by its employees, and the fact that he was a physician or that the duties were connected with the care of his private patient would not necessarily make the acts of the employees medical acts." *Id.* at 358, 42 N.E.2d at 420.

The Court further noted:

"Here the direction of the head nurse of Norways Sanatorium to the appellee, Carl Jones, to take appellant's decedent to the office of Dr. Beeler on the seventh floor of the Hume-Mansur building, and the acts or omissions of Carl Jones as an attendant and employee of the sanatorium in guarding or protecting him while he was being so taken and while he was so located, were routine administrative or ministerial acts of the hospital itself and in no sense medical acts, and for any negligence in the performance thereof the sanatorium, and if the negligent act or omission was an act or omission of its attendant, the attendant also, would be liable." *Id.* at 359, 42 N.E.2d at 420.

Closely analogous to the instant case is *Cramer v. Theda Clark Memorial Hospital* (1969), 45 Wis.2d 147, 172 N.W.2d 427 in which a patient, having only one arm restrained, loosened the restraint with his free hand and fell while attempting to stand. In its analysis of the case the Wisconsin Supreme Court stated:

"Is it necessary for Cramer to establish the standard of care of other hospitals in the general area to assist the jury in making a determination as to the negligence alleged in his complaint? It is quite true the complaint alleges facts relating to the type of hospital care which requires expert testimony. These allegations go to hospital treatment in a professional sense. However, the allegations concerning negligence in leaving Cramer unattended and under inadequate restraint and removing the cloth restraint of one hand in order to allow him to feed himself are matters of routine care and do not require expert testimony.

\* \* \* \* \* \*

"We do not consider this complaint one for malpractice or for breach of a standard of care so technical in nature as to require expert testimony. Consequently, the trial court should have allowed the issues which could be determined by common knowledge to go to the jury and instructed them on such reasonable care. It should have withheld only those issues upon which there was the necessity for expert testimony to establish a standard." *Id.* at 153–154, 172 N.W.2d at 430–431.

Physicians' Physical Therapy Service, Inc. attempts to distinguish *Fowler* and *Cramer* on the grounds that the institutions involved in those cases had knowledge that the patients were mentally disturbed or confused and were in need of restraints. While these factors are certainly relevant with regard to the reasonableness of an institution's actions, they have no bearing whatsoever in determining whether a decision is medical as opposed to routine and ministerial.

The logic of *Cramer* is persuasive. It is therefore held that the decision not to restrain Mrs. Busack was not a medical decision but rather a routine, ministerial decision. As such, the jury was improperly instructed regarding the standard of care and reliance on expert testimony. Additionally, the expert testimony was improperly admitted with regard to matters within the common knowledge and experience of the jury.

■ Physicians' Physical Therapy Service, Inc. argues that even if this Court

finds the instructions to be erroneous, the judgment should be sustained because Emig failed to prove that Mrs. Busack's injuries were the result of the lack of restraint. In support of this argument, Physicians' Physical Therapy Service, Inc. refers the Court to certain testimony which indicates that Mrs. Busack's hip broke by itself, and it was this break which caused her to fall. This argument however, ignores the fact that it may be possible that if Mrs. Busack had been restrained and not allowed to stand unsupported, the hip would not have broken. It cannot be said that as a matter of law, Emig failed to prove proximate cause. In light of the erroneous instructions and improperly admitted expert testimony, this cause is reversed and remanded for proceedings consistent with this opinion.

Reversed and remanded.

GARRARD and STATON, JJ., concur.