171 So. 250
**SOUTH HIGHLANDS INFIRMARY, Inc., v. GALLOWAY.**

6 Div. 868.

Supreme Court of Alabama.

Oct. 15, 1936.

Rehearing Denied Dec. 17, 1936.

William S. Pritchard and James W. Aird, both of Birmingham, and Watts & White, of Huntsville, for appellee.

Bowers & Dixon, of Birmingham, for appellant.

BOULDIN, Justice.

Action for personal injuries sustained by a patient in a hospital.

The injuries are charged to negligence on the part of the employees of defendant in the post-operative care or nursing of the plaintiff.

There was verdict for defendant. The trial court, on motion of the plaintiff, granted a new trial. Defendant appeals from this ruling.

The ground on which the new trial was granted, as shown by the judgment on the motion, was alleged error in giving two written charges requested by defendant, and no other ground.

The facts, in the main, are undisputed. Mr. Galloway, the plaintiff, was admitted to the hospital on the usual terms to be treated by his own physician for prostatic trouble. He had undergone an operation, known to the profession as prostatic resection. No general anesthetic was used. Instead a spinal anesthetic, novocaine, was employed, designed to affect only the parts below the lumbar region where it was applied. A preparatory opiate, pantopon, had been administered as per the usual practice in such cases, to produce what one physician termed a balanced anesthetic. The operation was prolonged, and a second opiate was administered to carry the patient through the operation. On completion of the operation, and the return of the patient to his room, his care was assigned to Miss Sanderson, a hospital nurse, mentioned in charge 8, which is under review.

The operating physician, the patient's son, and Miss Sanderson all remained in the room for some forty minutes. Meantime a saline solution was administered. The patient was then left in Miss Sanderson's care, who remained in the room, taking her estimate of the time, some forty minutes longer, when she left the room, and went into the hall some forty feet away to make entries on the chart. Five minutes later the physician returned and found the patient on the floor in much pain. He had fallen from the hospital bed and fractured his thigh-bone. He was seventy-eight years old.

The action is for this injury.

The substantial issue of fact presented in the evidence was whether there was negligence in leaving the patient alone in his room at that time.

■ Defendant's given charge 8, one of the rulings on which the trial court granted a new trial, reads:

"I charge you, gentlemen of the jury, that even though it may have developed to be bad judgment on Miss Sanderson's part to leave Mr. Galloway alone in the room at the time and place of the accident, still you cannot find for the plaintiff if you are further reasonably satisfied from the evidence that she did nothing more than any reasonably prudent, careful, skilled and diligent nurse would have done under the same or similar circumstances."

We are not impressed with the view that this charge is bad because it predicates negligence only on acts of commission, ignoring acts of omission.

■ In cases where an issue is presented touching positive acts of negligence, and also an issue involving lack of care from nonaction, instructions predicating a verdict on the one and ignoring the other is error. McBride v. Barclay, 219 Ala. 475, 122 So. 642.

■ In the above charge the expression "did nothing more" refers back to the sole matter of leaving the patient alone under the circumstances. It asserts quite clearly that if her leaving the room was no more than any reasonably prudent, careful, skilled, and diligent nurse would have done under like conditions, plaintiff cannot recover. Nor do we think the charge bad because it lays the entire responsibility on the nurse, ignoring any other negligence on the part of the management. The proximate cause of the injury, if due to negligence under the evidence, was negligence on the part of the nurse. Without dispute she was specially assigned to the care of the patient at the time. Such negligence, under the charge, could be lack of care to see and observe the condition of the patient, mentally and physically; lack of skill or training in passing judgment on that condition as affecting his safety in the absence of an attendant; lack of diligence in ascertaining the things she should know concerning the operation, and the treatment during operation, so far as these facts would aid a competent nurse to anticipate the reaction or after effects to probably follow his coming out from under the narcotic and immediate shock of the operation. Hyperaesthesia is given as the medical term designating the excitement resulting from restored sensation of the anesthetized parts, etc.

The charge concedes defendant's responsibility for negligence due to lack of skill or diligence, if any, on the part of the nurse. This charge, at most, is subject to criticism as misleading in using the expression "bad judgment" in its connection. If no bad judgment was used in leaving the room, it could not become so, because of untoward events which followed. This is what the charge, taken as a whole, imports; but using the expression "bad judgment," then eliminating it, might have some misleading effect.

Charge No. 19 reads:

"I charge you, gentlemen of the jury, that unless you are reasonably satisfied from the evidence that the servants, agents or employees of defendant, in and about the treatment of Mr. Galloway, used the same degree of care, skill and diligence as used by hospitals generally in this community, then you cannot find for the plaintiff."

This charge presents patent error. It instructs the jury not to find for plaintiff, unless there was a want of negligence on the part of defendant's employees. This, of course, was in direct contradiction of other instructions; at variance with the pleadings, and all the evidence presented under the issues.

Courts and lawyers would see at once that this charge did not express what was intended by counsel, and was given by the court through oversight.

It is insisted that the jury would see this, ascribe to it a meaning different from what was clearly stated, or ignore it in their deliberations. No doubt the jury, presumed to understand instructions from the court, would readily see this charge was in conflict with all else they had been told in the case, and be strongly impressed there was some mistake in giving it.

But the serious inquiry is, Would the jury feel free to disregard it? Having been requested by counsel, having been examined by the trial judge, marked "given" and signed, and then read to them with instructions that this was part of the law of the case, should it be now assumed that the jury took it upon themselves to pass judgment on matter, and ignore the charge? If not, then the jury were confronted with instructions to the effect that plaintiff could not recover unless there was negligence, and another that plaintiff could not recover unless there was no negligence. To follow both could result only in a verdict for defendant.

Since the trial court, reflecting on the whole matter, granted a new trial expressly on grounds including this charge, we hold his ruling should not be disturbed.

To cast on the jury the duty to pass judgment on the doings of the trial judge would be a dangerous precedent.

It is an established rule that giving conflicting instructions on material issues is reversible error, therefore proper ground for a new trial. Louisville & Nashville Railroad Co. v. Christian Moerlein Brewing Co., 150 Ala. 390, 400, 43 So. 723; Johnson v. Louisville & N. R. Co., 220 Ala. 649, 127 So. 216; Schieffelin v. Schieffelin, 127 Ala. 14, 38, 28 So. 687; Alabama City, G. & A. R. Co. v. Bates, 155 Ala. 347, 46 So. 776; Alabama Power Co. v. McIntosh, 219 Ala. 546, 122 So. 677 (20); Bessemer Feed Mills v. A. G. S. R. Co., 217 Ala. 446, 116 So. 796.

Appellee insists charge 19 was erroneous in defining the degree of care, namely, "the same degree of care, skill and diligence as used by hospitals generally in this community."

This, in substance and effect, is the rule applicable to actions against physicians and surgeons for malpractice. Negligence in such cases is defined to be "'a failure to exercise reasonable and ordinary care, diligence and skill in respect to the duty so assumed and undertaken as physician and surgeon—such care and skill as physicians and surgeons in the same general neighborhood, pursuing the same general line of practice, ordinarily employ and exercise in a like case. Robinson v. Crotwell, 175 Ala. 194, 57 So. 23; Carpenter v. Walker, 170 Ala. 659, 54 So. 60, Ann.Cas.1912D, 863; Shelton v. Hacelip, 167 Ala. 217, 51 So. 937; McDonald v. Harris, 131 Ala. 359, 31 So. 548; 30 Cyc. 1575; 14 Am. & Eng.Ency. Law (1st Ed.) 76, 78.' Talley v. Whitlock, 199 Ala. 28, 73 So. 976; 21 R.C.L. 381, § 27." Dabney v. Briggs, 219 Ala. 127, 128, 121 So. 394.

In hospital cases, the rule is thus stated:

"* * * the measure of duty was that degree of care, skill, and diligence used by hospitals generally in that community, *and by the express or implied contract of the undertaking.*" (Italics supplied.) Birmingham Baptist Hospital v. Branton, 218 Ala. 464, 468, 118 So. 741, 744.

Emphasis is laid by appellee on the italicized words as importing more than the degree of care stated in the other portions of the quotation.

In Birmingham Infirmary v. Coe, 206 Ala. 687, 688, 91 So. 604, 605, a hot water bottle case, the trial court, by way of explanation of a preceding instruction, said:

"'Under all the evidence in this case, you are simply to decide, whatever the temperature of the water was, whether or not the defendant exercised the ordinary precautions demanded of them, at this time, in view of the condition of the patient, also keeping in view the generally approved customs and methods of other hospitals of like character.'"

This court treated this language as a pertinent statement, correcting any misleading effect of the preceding statement.

Broadly speaking, ordinary care, that care which persons of common prudence exercise under like conditions, is the degree of care recognized by the courts throughout the country. This implies a care having regard to the conditions of the particular case, and to the fact that the subjects of ministry are sick people. It implies an obligation to have such training and possess such skill as will enable the nurse to give reasonable and ordinary care to the patient. The hospital is liable for want of ordinary care, whether from incompetency of the nurse, or failure of duty by a fully qualified nurse. The many cases dealing with particular conditions, and the test of ordinary care as applied thereto, are reviewed at length in notes found in 22 A.L.R. 341, and 39 A.L.R. 1431 et seq. We have examined numerous supplementary cases arising since the above notes were compiled. Among these we cite Timbrell et ux. v. Suburban Hospital, Inc. et al. (Cal.App.) 36 P.(2d) 435, defining the degree of care substantially as in the Coe Case, supra. See, also, Hawthorne v. Blythewood, Inc., 118 Conn. 617, 174 A. 81, 82; Emory University v. Shadburn, 47 Ga. App. 643, 171 S.E. 192; Duke Sanitarium et al. v. Hearn, 159 Okl. 1, 13 P.(2d) 183.

The added expression in the Branton Case, supra, "and by the express or implied contract of the undertaking," is unquestionably correct, and pertinent in framing an inclusive statement of the law applicable to all cases. It is not to be construed as imposing a greater "degree of care, skill, and diligence" than that "used by hospitals generally in that community," unless there is some evidence of an express or implied contract imposing a higher obligation than that implied from the admission of a pay patient on the customary basis. Such is this case, and we approve the statement of the degree of care in charge 19 as applied to the evidence in the particular case. A different situation might arise if it were affirmatively shown that hospitals in that community generally followed practices lacking in ordinary care for patients received for hospitalization.

The fact that undergraduate nurses are, by the practice of hospitals generally, put in charge of patients following operations where anesthetics, general or local, have been employed is not evidence of a want of ordinary care. Such practice must be left to the judgment, not of laymen in the jury box, but of those specially qualified by experience and learning. As before stated, if reasonable and ordinary care and skill are not employed in protecting the patient, the hospital is liable for the consequences, whether the employee in charge is a graduate or an undergraduate nurse.

There was no evidence in the case at bar that the undergraduate nurse did not have the training and skill requisite to take charge of the patient at the time.

Under the evidence in this cause, it was a question for the jury to find whether the patient, to all reasonable appearances, had become sufficiently "oriented" to his surroundings; that is, had so far retained or regained his mental and physical faculties as to know where he was, what his condition was, and the necessity to keep quiet, that it reasonably appeared to be safe to leave him alone for a few minutes.

Needless to say the hospital was not an insurer of his safety; nor is this a case of res ipsa loquitur.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.