JULIA FERGUSON, administratrix, *vs.* DR. McCARTY'S REST
HOME, INC.

Middlesex.    April 1, 1957. — May 1, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, & CUTTER, JJ.

*Negligence*, Rest home.

Evidence of the circumstances in which an elderly woman patient of a
rest home, paralyzed on her left side, suffered burns on her left foot
during a winter night when, after she had been made ready and left
for the night by an attendant in a bed situated close to a radiator to
its left, her left foot somehow got out from under the blankets and
onto the radiator, which then was hot, while she was asleep warranted
a finding of negligence on the part of the attendant in preparing her
for the night; but further evidence respecting her ringing and calling
for help upon waking and finding her foot on the radiator and the re-
sponse of an attendant thereto did not warrant a finding of negligence
in failing to go to her aid seasonably.

CONTRACT OR TORT.    Writ in the Superior Court dated
April 18, 1955.

The action was tried before *Beaudreau*, J.

*Edward R. Wine*, for the defendant.

*Richard T. Harris*, (*Robert G. Conley* with him,) for the
plaintiff.

SPALDING, J.    In this action of tort the original plaintiff,
Mary Brown, had a verdict which was recorded under leave
reserved.    Shortly prior to the arguments before us a sug-
gestion of the death of the original plaintiff was filed and
her special administratrix moved to be substituted as party
plaintiff.    This motion is allowed, but for convenience the
original plaintiff will be referred to hereinafter as the plain-
tiff.    The case comes here on the defendant's exceptions to
the denial of its motions for a directed verdict and for the
entry of a verdict in its favor.    Both exceptions present the
question whether there was a case for the jury.    *Berwick &
Smith Co.* v. *Salem Press, Inc.* 331 Mass. 196.

A summary of the evidence most favorable to the plaintiff is as follows: In December, 1954, the plaintiff, aged eighty-one, had pneumonia and was treated at a hospital. While at the hospital she suffered from a shock, as a result of which the left side of her body was completely paralyzed. On January 12, 1955, she was admitted to the defendant's rest home. At the time of her admission her left side was still paralyzed and there was no mobility in her left arm and leg. She could, however, roll toward the left in bed and the defendant had knowledge of this fact. The plaintiff was placed in a bedroom with another woman and occupied a twin size bed. The left side of the bed was parallel to a wall against which stood a radiator of approximately the same height as the bed. "As far as . . . [the plaintiff] could see [the] left side of her bed was up against [the] radiator." There were no side boards on the bed.

On January 13 the plaintiff was made ready for the night by one of the defendant's attendants, a practical nurse. The attendant, fearing that, because of a tendency to move to the right, the plaintiff might fall out of bed on the right side, moved her "further in the bed to the side the radiator was on." She was tucked in under the sheets and blankets. The plaintiff was lying on her back. From this position she could and did touch the radiator with her right hand; at that time the radiator was cold. Sometime during the night the plaintiff awoke and found that her left foot, which had gotten out from under the blankets, was on the radiator. The radiator by this time was hot. She did not know how her foot got on the radiator or how long it had been there before she was aware of it. She rang for the night attendant and when there was no response she called for help. "A nurse answered from way up" and came to her aid "as soon as . . . [she] could pull herself together." There was "no way of telling how long before [the] nurse came down" but "it seemed to [the] plaintiff as if it was an hour." The plaintiff suffered third degree burns on her left foot.

We do not think that there is any basis for a finding of negligence on the part of the defendant in failing seasonably

to aid the plaintiff after she called for assistance. The plaintiff stated that there was no way of telling how long it was before the nurse came down and her statement that "it seemed . . . as if it was an hour" can hardly be said to amount to anything. Doubtless any period of time while her foot was on a hot radiator would seem long. Moreover, she testified that after the nurse answered her call she came down "as soon as . . . [she] could pull herself together." If there was a case for the jury it must rest on what the defendant did or did not do in leaving the plaintiff for the night in the circumstances here disclosed. We cannot say as matter of law that the evidence warrants no other conclusion than that of reasonable care on the part of the defendant.

The defendant through its employee was aware of the fact that not only did the plaintiff have a tendency to move to the right but that she also could "roll towards the left." With knowledge that this elderly woman was capable of moving in either direction in bed, despite the fact that her left side was totally paralyzed, the defendant's attendant placed her bed close to a radiator which later in the night became very hot. The jury could reasonably have inferred that during the night the plaintiff while asleep moved toward the left side of the bed and that in so doing her left foot came out from under the bed clothes. Although this was a somewhat unusual occurrence, we think that a jury might, nevertheless, reasonably have found that the defendant ought to have foreseen and guarded against it. It might have been found that the defendant was negligent either in failing to guard the radiator or in placing the bed too close to the radiator. In this respect the case bears some resemblance to *Howlett* v. *Dorchester Trust Co.* 256 Mass. 544.

The defendant's contention that the plaintiff was guilty of contributory negligence as matter of law is without merit and requires no discussion.

*Exceptions overruled.*