128 So.2d 485

Mrs. O. Z. DUNAHOO

v.

Mrs. Carrie BROOKS.

6 Div. 573.

Supreme Court of Alabama.

March 30, 1961.

Huie, Furnambucq & Stewart, Birmingham, for appellant.

Rives, Peterson, Pettus & Conway and Edgar M. Elliott, III, Birmingham, for appellee.

STAKELY, Justice.

This is an appeal by Mrs. O. Z. Dunahoo (appellant) from a judgment rendered against her in favor of Mrs. Carrie Brooks (appellee). The case was tried before the court without a jury and judgment was rendered in the amount of $7,500. The case was tried on Count A, which charged the defendant with simple negligence. The defendant pleaded in short by consent. Motion for a new trial was overruled and hence this appeal.

Stated as simply as possible, this suit is based upon a fall which occurred on July 16, 1959. The plaintiff, Mrs. Carrie Brooks, at the time of her fall was ninety-four years of age and weighed about seventy pounds. She was able to walk without assistance. Her vision "close up" was poor although she could see at a distance, which was known to the defendant.

Defendant was a practical nurse with forty-five years of experience. She had engaged during that time in private nursing, nursing in a hospital, nursing for a physician and in a private clinic. At the

time of the fall, defendant was engaged in the business of caring for elderly people for hire in her home located at 1400 North 30th Street, Birmingham, Alabama. Among those whom she attended from time to time in her home were persons who were crippled, old, invalid, paralyzed, amputees, afflicted, that is, having the appearance of being afflicted in the brain and recuperating from a heart attack. To assist her, she employed a colored practical nurse, Mary Hamby.

A contract was made for the plaintiff with the defendant whereby for $150 per month the defendant was to provide plaintiff with full-time nursing care. She was to administer medicine, call physicians when necessary and provide room, board and laundry. She was to have complete charge of the plaintiff. During the plaintiff's stay with the defendant, the defendant served the plaintiff meals, helped her dress, helped bathe her, assisted her in the bathtub and administered medicine to her. The plaintiff came to the defendant's home on a stretcher in an ambulance from the hospital in December, 1957.

The room which plaintiff occupied in defendant's home is depicted in a photograph which is before the court. Adjacent to plaintiff's bed were some windows looking out upon the front porch of defendant's home. There was room enough between the windows and the bed to walk. Upon these windows were some curtains. Between the windows and the bed was a portable commode stool frequently utilized by the plaintiff. There was a bed lamp owned by the plaintiff on the headboard of plaintiff's bed, which was placed there in replacement of one owned by the defendant. The cord from this headboard ran around the commode stool and plugged into a socket in the floor between the plaintiff's bed and the window as shown in the photograph. This socket was about five inches out from the baseboard. The cord lay loose on the floor and was not tacked or affixed to the baseboard. This cord was plugged into this particular socket by the defendant. After the fall, the defendant admitted that the socket should not have been placed in the position in which it was located.

The floor covering was a hard, shiny linoleum which replaced a woolen rug or carpet. The linoleum was slick and smooth.

On the date of the accident the plaintiff arose from her sleep, ate breakfast, rested some, took the medicine offered to her by the defendant, lay down for a while and then, having noticed some men on the porch, got up to insert a pin in the curtains in order to close a crack in the curtains, after which she started back to her bed and fell. According to the plaintiff's testimony she was feeling well but caught her foot in the wire which "threw me." She stated that her foot got tangled in the cord and she slipped. She stated that it must have been the cord which caused her to fall as there was nothing else. When plaintiff was found, the cord was around her foot completely and the cord was pulled from the plug. The defendant was aware that the plaintiff frequently used the area where the cord was located. In her testimony the plaintiff stated, "That is what I reckon made me fall. I can't imagine why I fell, because I was perfectly well and I was able to go about and do what I wanted to do."

The plaintiff suffered a fracture of the left hip at the neck of the femur, which required a total hip prosthesis or hip replacement and she will be disabled from walking for the rest of her life without the use of a walker. She also suffered various hospital and medical expenses, which we shall not enumerate since there seems to be no question as to their reasonableness.

█ I. Citing Mobile Infirmary v. Eberlein, 270 Ala. 360, 119 So.2d 8, appellant takes the position that the court was in error in admitting, over the objection of the defendant, the deposition of Mrs. Dun-

ahoo, since she was present in court and competent to testify. There was no error in this ruling. The case referred to dealt with the depositions of witnesses. The instant case deals with the deposition of the defendant, a party to the cause. The use of a deposition of a witness is governed by § 474(4) (c), Title 7, 1955 Cum.Pocket Part, Code 1940, while the use of the deposition of a defendant is controlled by § 474(4) (b), Title 7, 1955 Cum.Pocket Part, which states that the "deposition of a party * * * may be used by the adverse party for any purpose." No limitations whatsoever are placed upon the use. Accordingly the presence of the party in court does not affect the admissibility of that party's deposition.

We see no reason to discuss the proposition further, except to say that since the Alabama act under discussion is largely taken from the Federal Rules of Civil Procedure, Federal cases construing the Federal Act should be carefully considered. Mobile Infirmary v. Eberlein, supra. The rule under consideration deals not only with parties, but with an officer, director or managing agent of a company and therefore a Federal decision which considered the introduction in evidence of the deposition of a managing agent of a party when he is present in court, is persuasive. In Pfotzer v. Aqua Systems, Inc., 2 Cir., 162 F.2d 779, 785, Judge Learned Hand said:

> "The deposition of Kaestner taken before the trial was admissible as evidence: in chief, if Kaestner was an officer of the Acqua Company when it was taken (Rule 26(d) (2); and in any event, to contradict his testimony on the stand. (Rule 26(d) (1))."

See Napier v. Bossard, 2 Cir., 102 F.2d 467. Arnstein v. Porter, 2 Cir., 154 F.2d 464, cited by this court in the Eberlein case, supra, dealt with a motion for a summary judgment and while the court stated that a summary judgment should not be granted upon depositions, it did refer to Napier v. Bossard, supra, saying:

> "Of course, under the Rules, the deposition of an adverse party may be used 'for any purpose,' but it is not a compulsory substitute for his examination in open court."—Arnstein v. Porter, 2 Cir., 154 F.2d 464, 470, footnote 11.

II. The only other errors of which appellant complains deal with the lower court's ruling upon the facts before the court. It is insisted that the defendant was guilty of no negligence and that even if defendant was guilty of negligence, the plaintiff was guilty of contributory negligence. We have stated that the case was tried orally before the court.

"* * * In this situation our review is guided by the settled rule that the finding of the trial court, * * * has the effect of a jury's verdict and will not be disturbed on appeal unless plainly and palpably wrong. * * * The question being fairly debatable and neither conclusively proved nor disproved, this court, * * * will not substitute its own judgment for that of the trier of facts at nisi prius, who is charged with the primary duty and responsibility of determining factual issues. * * *" Parrish v. Davis, 265 Ala. 522, 524, 92 So.2d 897, 900.

However, before discussing the evidence relating to negligence, we should look to see what duty was owed by the defendant to the plaintiff in this case. There is evidence tending to show that defendant was running a nursing home for aged people and contracted to give full-time nursing care to the plaintiff. The plaintiff was ninety-four years of age, a feeble woman who went to the defendant's home from a hospital on a stretcher. The defendant being aware of plaintiff's infirmities and agreeing to give her nursing care, certainly assumed an obligation to exercise care commensurate

with plaintiff's physical condition. In fact the defendant stated that it was her job to protect and care for those in her custody. According to her own testimony, "They are like babies," and further, "I don't get them until they are (feeble) or until they get where they can't help themselves."

In Norwood Clinic, Inc. v. Spann, 240 Ala. 427, 430, 199 So. 840, 841, the plaintiff was sixty-four years of age and was crippled from polio. In entering a medical clinic to have his eyes examined he fell on a slick, sloping walkway and broke his leg. This court said:

"Counsel for appellant argue the question with the admission that plaintiff was in the attitude of an invitee, and that as such appellant owed him the duty to use reasonable care and to have said entrance to the clinic in a reasonably safe condition for plaintiff. * * *

"This means, we take it, that appellant must be held to have assumed that people of all sorts of ailments and personal infirmities will use this facility. That is its purpose. It is not primarily instituted to accommodate robust, strong, healthy people, nor even those of average normal physique, but the sick and infirm. It should be designed and maintained with that in view, and the reasonableness of its safety must be in respect to such infirm people as was this plaintiff. * * *

"The jury should have more latitude in determining its reasonable safety for use of those who are infirm than if the place were designed to accommodate people of average physical condition. The authorities cited above are in accord. We have cases of various circumstances where invitees were caused to slip and fall. Each is decided upon an application of the same principles of law, but as applied to their respective circumstances. * * *" And in another place the principle is stated as follows:

"It was the duty of the clinic to anticipate the use of this walkway by those in any manner of affliction, and use due care for them. * * *" 240 Ala. 431, 199 So. 842.

In South Highlands Infirmary v. Galloway, 233 Ala. 276, 280, 171 So. 250, 253, the principle that the condition of the person to whom the duty is owed must be considered in determining the degree of care, was recognized as follows:

"Broadly speaking, ordinary care, that care which persons of common prudence exercise under like conditions, is the degree of care recognized by the courts throughout the country. This implies a care having regard to the conditions of the particular case, and to the fact that the subjects of ministry are sick people. * * *"

See 38 Am.Jur., §§ 37 and 38, pp. 683–684; Lagrone v. Helman, 233 Miss. 654, 103 So.2d 365; Facey v. Merkle, 146 Conn. 129, 148 A.2d 261, 70 A.L.R.2d 358; Ferguson v. Dr. McCarty's Rest Home, 335 Mass. 733, 142 N.E.2d 337.

Coming now to the evidence, we note the following. An electric light cord was allowed to lie loose upon the floor of a room occupied by a woman ninety-four years old, in an area which was used frequently for many purposes. It was left to lie loose in a pathway utilized by the plaintiff, with the defendant's knowledge and consent, among other things, to have access to her commode stool and also to adjust draperies on the windows. There was a failure to use a few brads or nails to affix the light cord to the baseboard and so out of the pathway of the plaintiff. There was a failure to remove the plug for the light cord from a position in the floor five inches away from the baseboard to the accepted place on the side of the baseboard.

We are not willing to say that there was contributory negligence on the part of this aged plaintiff in trying to get to and from the window in order to shield her bedroom from the eyes of men on the porch. We are not willing in this way to substitute our judgment for that of the trial court.

III. It is argued by the appellant that a finding for the plaintiff is to make speculation the basis for the judgment of the court, since the injuries could have occurred in a number of different ways which counsel undertake to set forth. The rule is that if the evidence has selective application toward one theory of causation, then the judgment is not based on speculation and conjecture. We call attention to the following statement by this court in Southern Ry. Co. v. Dickson, 211 Ala. 481, 100 So. 665, 669:

"But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. *On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.*

"We have examined with critical care the testimony bearing upon these questions and issues; and, while it might fail to reasonably satisfy our minds that any negligent act of the engineer * * * proximately caused plaintiff to be thrown from the train and injured, yet we think the evidence, especially the testimony of plaintiff, his fellow employé, Gaffney, and the engineer, Ledford, is sufficient to support such a finding. * * *" (Italics supplied.)

See City of Bessemer v. Clowdus, 261 Ala. 388, 74 So.2d 259; Ten Ball Novelty & Mfg. Co. v. Allen, 255 Ala. 418, 51 So.2d 690. In Alabama Power Co. v. Pierre, 236 Ala. 521, 524, 183 So. 665, 668, this court said:

"True, there is no positive proof as to the cause of the fire, and many different causes may be imagined. But where, as here, the evidence points to one theory of causation, indicating a logical sequence of cause and effect, there is a juridical basis for such determination, notwithstanding the existence of other plausible theories, whether with or without support in the evidence."

The defendant herself testified that when she found the plaintiff, the cord was wrapped completely around her leg and pulled from out of the plug. We consider that this and the other evidence is sufficient to point to the cause of the plaintiff's fall.

Upon a careful consideration, we think that the judgment of the lower court should be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.