*Western District*

## THOMAS BRODERICK, ADMINISTRATOR OF THE ESTATE OF MARGARET T. BRODERICK

v.

## HAMMOND HAVEN NURSING HOME, INC.

Argued: Nov. 9, 1966   Decided: Dec. 16, 1966

*Present:* Garvey, P.J., Moore, J. and Allen, J.J.

Case tried to *Macintosh, J.* in the Central District Court of Worcester   No. 66-T-174

Garvey, P.J.   This action of tort was transferred by order of a justice of the Superior Court to the Central District Court of Worcester for trial. G.L. c. 231, § 102C. The plain-

tiff in the first count, seeks to recover damages for the death, and in the second for the conscious suffering of his intestate, (hereinafter called the plaintiff) alleged to have been caused by a fall while she was a patient in a licensed nursing home operated by the defendant. There was a finding for the plaintiff on both counts.

The defendant requested a report. The issues raised and argued by the defendant are to the denial of its requests directing the trial judge's attention to (a) the evidence did not warrant a finding for the plaintiff, and (b) that in the absence of instructions by the plaintiff's physician as to the necessity of special care, including the use of restraints, it could not be found negligent.

We summarize the trial judge's detailed special findings, warranted by the reported evidence:

> In *February, 1963* the plaintiff was accepted by the defendant, who operated a licensed nursing home in Worcester, as a paying patient. She remained there until *November 22, 1964,* when, because of injuries sustained in a fall that day she was removed to the Worcester City Hospital where she died on December 25, 1964. (It is conceded that the injuries caused her death).
>
> On her admission to the defendant's nursing home she was *89 years of age,* senile, disoriented, almost sightless, agi-

tated, but ambulatory with assistance. At this time she assisted herself in walking by the aid of a cane and later with a "walker".

She was attended at the nursing home by her family physician whenever necessary. He first treated her on June 13, 1963 "for a mentally disturbed condition" caused by arteriosclerosis. He next saw her on August 23, 1963 for the same condition at which time he regarded her as senile. He saw her again on November 4, 1963 for swelling of the ankles.

Her mental condition was the same. On November 19, 1963, by telephone, he ordered that she be put under restraint at night. He never gave any other order in reference to restraint.

The records of the defendant disclosed that the plaintiff had fallen at the nursing home on November 24, 1963, March 12, 1964 and August 9, 1964.

The defendant used two methods of restraint on patients. Bind a sheet, or other broad piece of cloth, around the patient's waist and tie it either to the bed or chair. Used a "Posy" which consists of a sleeveless vest with tapes on the back that could be tied to either a bed or a chair.

On November 22, 1964, the plaintiff was sitting, without restraint and unattended,

in a chair three feet from the foot of her bed. "I find that she had frequently been under restraint during the preceding six months. (S)he had been ill in September and thereafter very weak". After "about one-half hour (sitting in the chair) she became tired and tried to get back to bed unassisted and fell". When she became tired and desired to return to bed "that she would try to get there herself were obvious facts and should have been anticipated by the defendant". On her admission to the Worcester City Hospital she was described by the orthopedic surgeon as "an ancient, confused, apparently blind, white female in pain from the right hip".

It was the duty of the defendant to use reasonable care, *Ferguson* v. *Dr. McCarthy's Rest Home, Inc.,* 335 Mass. 733, 735. Such care as her known physical and mental condition required. *White* v. *Baptist Memorial Hospital,* 363 F. 2d 37 (1966). See 70 ALR 2d 377, 366-382.

The defendant argues that in the absence of expert testimony as to customary methods or practices used by other nursing homes in like circumstances the trial judge was not warranted in finding the defendant negligent. We do not agree.

This is not a malpractice action, or one, in our opinion "of such character or com-

plexity that it cannot be assumed to be within the ordinary experience or knowledge of men. . . ." *Jackson* v. *Anthony,* 282 Mass. 540, 544. See: *Davis* v. *Living Aluminum Corp.,* 17 Legalite 372. Opinion testimony in a motor tort case by an investigating police officer and motor vehicle inspectors as to the vehicles causing skid marks fully described in the testimony, was held inadmissible in *Turcotte* v. *DeWitt,* 332 Mass. 160, where the court at page 165 said, "Where a matter may easily be comprehended by jurors the testimony of an expert has no place". See also *Com.* v. *Gardner,* —— Mass. ——.

"Our cases have long held that evidence of a general practice or of what is customarily done by others may, in the judge's discretion, be received on the issue of negligence. Even where the discretion of the trial judge would have been better exercised by admitting the testimony, this court has refused to say as a matter of law that the court was bound to receive it." *Carney* v. *Bereault,* 348 Mass. 502, 510. *Dolan* v. *Boott Cotton Mills,* 185 Mass. 576, 579. *Maynard* v. *Buck,* 100 Mass. 40.

It was held in *Stewart* v. *Worcester Gas Light Co.,* 341 Mass. 425, 433-434, "The jury, on the basis of their general knowledge of practical affairs" could find a "gas company used less than reasonable care" when it discontinued service to a house by closing the shut-off in the cellar but not at the street. It

might have been helpful "if there had been evidence of generally approved gas company practice as to service discontinuances. The question, however, was not so dependent on expert engineering-knowledge that a jury could have no basis of decision without expert testimony".

In *Peloquin* v. *Robert Northridge Furniture Co.*, 341 Mass. 543, 546-547, the court said: "The jury might reasonably infer that the risk was materially increased when Bell attempted the task with only one trained helper. It would have been helpful if there had been evidence directed to whether the method adopted would have been proper and usual for an adequate number of professional movers. Even in the absence of such evidence the matter for decision were questions of fact, and of the application of the standard of due care of those facts, which the jury could reasonably appraise on the basis of their own experience. Expert testimony would have been appropriate but was not necessary."

The defendant had knowledge of the plaintiff's physical and mental condition—that she had fallen three times—that she would attempt to walk if left unrestrained or unattended.

These facts, with the others found by the trial judge, furnished a sufficient basis to warrant his finding the defendant negligent. He might "reasonably have found that the de-

fendant ought to have foreseen and guarded against'' the likelihood of her falling. *Ferguson* v. *Dr. McCarthy's Rest Home, Inc.*, 335 Mass. 733, 735.

We also feel the defendant cannot escape liability because the plaintiff's doctor had ordered that she be restrained only at night. The day to day custodial care of the plaintiff was the responsibility of the defendant, not her doctor. Nothing in the record indicates the doctor was aware of the fact that she had fallen three times, or that her doctor's permission for daytime restraint was necessary.

The report is to be dismissed.

HENRY P. GRADY of Worcester,
  for the plaintiff
POWERS, HALL, MONTGOMERY AND WESTON
  of Boston,
  for the defendant